# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. and ANDREW MITCHELL, and ANDREW MITCHELL, Individually §§§§§§§§§§§ *Plaintiffs*, v. CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc., *Defendants*. | Civil Action No. 4:14-CV-00833 Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Dismiss (Dkt. #60) and CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell (Dkt. #82). Having considered the motions and the relevant pleadings, the Court finds that CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Dismiss is **DENIED** and CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell is **DENIED** as moot.

## BACKGROUND

In 2008, the United States faced a housing crisis caused, in part, by mortgage fraud and predatory lending. The crisis caused home prices to plummet and foreclosures to skyrocket, leaving homeowners with negative equity in their homes. Distressed homeowners were unable to sell or refinance their homes to meet their mortgage obligations. In response to this crisis, the Government enacted the Emergency Economic Stabilization Act of 2008 ("EESA").

The Home Affordable Modification Program ("HAMP"), administered by the Treasury Department, was a voluntary program under EESA designed to prevent avoidable foreclosures by

providing homeowners with affordable mortgage-loan modifications and other alternatives to eligible buyers. HAMP's primary goal was to relieve the burden on homeowners by lowering their mortgage payments to 31% or less of their gross monthly income. Investors would receive payments and a guarantee that no modification would result in a mortgage worth less than the net-present value of the property. In return, mortgage servicers, in addition to their annual servicing fees, received HAMP incentive payments to complete the modifications. Each successful modification entitled the servicer from $1,200–2,000 depending on how long the mortgage was delinquent. From the program's start in 2009 through the second quarter of 2016, HAMP generated more than 1.6 million permanent modifications. In addition to HAMP, the Fair Housing Administration's ("FHA") and Veterans Administration ("VA") each had companion HAMP programs: "FHA-HAMP" and "VA-Hamp," respectively.

In 2009, OneWest Bank ("OWB") enrolled in the HAMP, FHA-HAMP, and VA-HAMP programs. On August 18, 2009, OWB Executive Vice President and Chief Operating Officer Tony Ebers expressly certified OWB's compliance with HAMP guidelines and applicable federal laws in signing the initial Servicer Participation Agreement ("SPA"). The SPA named OWB as the servicer and Fannie Mae as Financial Agent of the United States. The SPA required OWB to provide annual certifications of compliance with the specified terms and conditions.

Defendant expressly represented in the SPAs and annual certifications that: (1) it was in compliance with the terms and guidelines of HAMP; (2) it was in compliance with all applicable laws and requirements; (3) it created and maintained an effective HAMP program and committed the resources needed to employ enough trained, experienced personnel with the tools and technology necessary to provide quality service to homeowners; and (4) it had adequately documented and monitored its compliance and immediately reported to the Government any

credible evidence of material violations of these certifications. Each annual certification included an express statement certifying that OWB continued to meet the terms and conditions of the SPA, including the representation of compliance with applicable laws.

On April 13, 2011, the Office of Thrift Supervision ("OTS") entered into a consent order with OWB ("2011 Consent Order"). Pursuant to the consent order, "a monitor was tasked to work with [OWB] to identify and remedy all deficiencies with its mortgage servicing and lending modification programs" (Dkt. #60). The terms of the 2011 Consent Order were reaffirmed by a consent order entered on March 11, 2014 ("2014 Consent Order"). On July 14, 2015, the Office of the Comptroller of the Currency terminated the 2011 and 2014 Consent Orders after finding that the Consent Orders were no longer required for the "protection of the depositors, other customers, and shareholders of the Bank, as well as its safe and sound operation" (Dkt. #60, Exhibit 8).

On December 23, 2014, Relator Michael J. Fisher ("Fisher") and Relator Andrew Mitchell ("Mitchell" or "Relator") filed their Original Complaint under seal (Dkt. #1). On October 21, 2016, Fisher and Mitchell filed an Amended Complaint under seal (Dkt. #24). On September 13, 2019, Fisher withdrew as a Relator (Dkt. #50; Dkt. #51). Subsequently, Mitchell filed Relator's Second Amended Complaint ("SAC") on October 11, 2019 (Dkt. #52). Defendants were subsequently served on October 15, 2019 (Dkt. #53; Dkt. #54).

In Mitchell's Second Amended Complaint, Mitchell, a former employee of OWB from 2009-2011, alleges that OWB made false claims to the United States in relation to its obligations under HAMP, FHA-HAMP, and VA-HAMP. More specifically, Mitchell alleges that OWB falsely certified that it was in compliance with the requirements of those programs by, among other things: (1) not having a loss mitigation program; (2) running a sham loss mitigation program that

had insufficient resources, caused unnecessary foreclosures due to untimely mortgage evaluations, and used incorrect evaluation tools to evaluate delinquent mortgages; (3) engaging in dual-trafficking; (4) offering inappropriate options to mortgagors under HAMP; and (5) improperly capitalizing principal and unaccrued escrow payments.

On December 6, 2019, Defendants filed CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Dismiss (Dkt. #60). Defendants aver that Mitchell's Second Amended Complaint: (1) relies on publicly available information; (2) fails to state a claim upon which relief can be granted; and (3) fails to meet the heightened Rule 9(b) pleading standard (Dkt. #60). Mitchell replied on January 28, 2020 by filing Relator Andrew Mitchell's Response in Opposition to the Motion to Dismiss of Defendants CIT Bank, N.A. d/b/a OneWest Bank and CIT Group, Inc. (Dkt. #71). Mitchell counters that, among other things: (1) the public disclosure bar does not require dismissal of Mitchell's claims; (2) his SAC properly states a claim for relief; and (3) his SAC satisfies the Fifth Circuit's pleading standard for FCA cases (Dkt. #71). On February 10, 2020, Defendants filed CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Reply in Support of Motion to Dismiss (Dkt. #81). Mitchell filed Relator Andrew Mitchell's Sur-Reply in Opposition to the Motion to Dismiss of Defendants CIT Bank, N.A. d/b/a OneWest Bank and CIT Group, Inc. (Dkt. #85) on February 20, 2020.

In Mitchell's Response to Defendants' Motion to Dismiss, Mitchell filed a Declaration supporting his Response (Dkt. #71, Exhibit 1). As a result of this attachment, Defendants filed CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell (Dkt. #82) on February 10, 2020. On February 25, 2020, Mitchell filed Relator Andrew Mitchell's Opposition to Defendants CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell (Dkt. #86). On March 3, 2020,

Defendants filed their Reply in Support of CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell (Dkt. #87). Finally, on March 10, 2020, Mitchell filed Relator Andrew Mitchell's Sur-Reply in Opposition to the Motion to Strike the Declaration of Andrew Mitchell of Defendants CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc. (Dkt. #88).

## LEGAL STANDARD

*Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-

5

pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

*Rule 9(b)*

Rule 9(b) "prevents nuisance suits and the filing of baseless claims as a pretext to gain access to a 'fishing expedition.'" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 191 (5th Cir. 2009). It is a heightened pleading standard that requires parties to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b); *see United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010).

However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186. Pleadings alleging fraud must contain "simple, concise, and direct allegations of

6

the circumstances constituting the fraud which…must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted). The Fifth Circuit requires plaintiffs to "specify the statements intended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001)). Therefore, Rule 9(b) requires the complaint to set forth "the who, what, when, where, and how of the alleged fraud." *United States ex rel. Stephenson v. Archer W. Contractors, L.L.C.*, 548 F. App'x 135, 139 (5th Cir. 2013) (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

Rule 9(b) "is context specific and flexible and must remain so to achieve the remedial purpose of the False Claim[s] Act." *Grubbs*, 565 F.3d at 190. Therefore, "a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without including all the details of any single court-articulated standard . . ." *Id.* at 188. However, [f]ailure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, No. 12-0371, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

## ANALYSIS

Mitchell brings this *qui tam* action pursuant to the False Claims Act ("FCA"). 31 U.S.C. § 3729(a)(1)(A)–(B). "The [FCA] is designed to allow suits 'by private parties on behalf of the United States against anyone submitting a false claim to the government.'" *United States ex rel. Fried v. W. Indep. Sch. Dist.*, 527 F.3d 439, 441 (5th Cir. 2008) (quoting *Hughes Aircraft Co. v.*

*United States ex rel. Schumer*, 520 U.S. 939, 941 (1997)). The FCA "promot[es] private citizen involvement in exposing fraud against the government," while "prevent[ing] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." *Id.* (quoting *Reagan*, 384 F.3d at 174). Defendants move the Court to dismiss this action under the FCA's public-disclosure bar, Federal Rule of Civil Procedure 12(b)(6), and Federal Rule of Civil Procedure 9(b).

*Public Disclosure Bar – 12(b)(6)*

To ensure that the parties have a fair opportunity to brief the Court on the public disclosure issue "under the proper standard and to present evidence pertinent to the issue, the Court in its discretion declines to treat the moving defendants' motions to dismiss as summary judgment motions or to convert the motions to dismiss into summary judgment motions." *See Health Choice All., LLC, on behalf of United States v. Eli Lilly and Co., Inc.*, 2018 WL 4026986, at *13 (E.D. Tex. July 25, 2018). Therefore, Defendants' Motion to Dismiss is denied without prejudice to either Defendant's right to seek dismissal on public disclosure grounds with a motion for summary judgment.[1]

*Federal Rule of Civil Procedure 12(b)(6) & 9(b)*

After reviewing the current complaint, the motion to dismiss, the response, the reply, and the sur-reply, the Court finds that Relator has stated plausible claims for purposes of defeating a Rule 12(b)(6) and a Rule 9(b) motion to dismiss. Consequently, Defendants' Motion to Dismiss is denied under both Rules.

---

[1] Because the Court does not find it appropriate to consider Defendants' public disclosure argument at this juncture, the Court need not decide the issue relating to Mitchell's Declaration. Therefore, Defendants' Motion to Strike Declaration of Andrew Mitchell is denied as moot.

## CONCLUSION

It is therefore **ORDERED** that CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Dismiss (Dkt. #60) is hereby **DENIED**.

It is further **ORDERED** that CIT Bank, N.A. d/b/a OneWest Bank, and CIT Group, Inc.'s Motion to Strike Declaration of Andrew Mitchell (Dkt. #82) is hereby **DENIED** as moot.

**SIGNED this 5th day of May, 2020.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE