```
                                                                    1
 1                    UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF TEXAS
 2                         SHERMAN DIVISION

 3   ANDREW MITCHELL                    :      DOCKET NO. 4:14CV833
                                        :
 4   VS.                                :      SHERMAN, TEXAS
                                        :      JULY 9, 2020
 5   CIT BANK, NA, ET AL                :      3:30 P.M.

 6                        TELEPHONE CONFERENCE
               BEFORE THE HONORABLE AMOS L. MAZZANT,
 7                  UNITED STATES DISTRICT JUDGE

 8   APPEARANCES (BY TELEPHONE):

 9   FOR THE PLAINTIFF:          MR. JEFFREY RAY BRAGALONE
                                 MR. DANIEL FLETCHER OLEJKO
10                               MS. STEPHANIE R. WOOD
                                 BRAGALONE CONROY
11                               2200 ROSS AVENUE SUITE 4500W
                                 DALLAS, TX   75201
12
                                 MR. ROGER D. SANDERS
13                               SANDERS O'HANLON
                                 111 S. TRAVIS
14                               SHERMAN, TX   75090

15   FOR THE DEFENDANT:          MR. WILLIAM J. SUSHON
                                 O'MELVENY & MYERS
16                               7 TIMES SQUARE
                                 NEW YORK, NY   10036
17
                                 MS. ELIZABETH LEMOND MCKEEN
18                               O'MELVENY & MYERS
                                 610 NEWPORT CENTER, 17TH FLOOR
19                               NEWPORT BEACH, CA   92660

20                               MR. MICHAEL LESLIE
                                 MR. SAMUEL CORTINA
21                               KING & SPALDING
                                 633 W. FIFTH, SUITE 1600
22                               LOS ANGELES, CA   90071

23                               MR. THOMAS JOHN WARD
                                 MS. CLAIRE ABERNATHY HENRY
24                               WARD SMITH & HILL
                                 1507 BILL OWENS PKWY
25                               LONGVIEW, TX   75604
```

Case 4:14-cv-00833-ALM Document 144 Filed 08/31/20 Page 2 of 20 PageID #: 2034

2

```
1  COURT REPORTER:              MS. JAN MASON
                                OFFICIAL REPORTER
2                               101 E. PECAN #110
                                SHERMAN, TEXAS  75090
```

24  PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT

25  PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.

1    THE COURT:  Good afternoon.  This is Judge Mazzant
2 and we're here in Case 4:14CV833, Andrew Mitchell versus CIT
3 Bank.
4    You've already made your appearances.  Again, you all
5 know the drill.  Just identify yourself every time you
6 speak.
7    And I set this for a hearing primarily to figure out
8 the best procedure for us to tee up the issue of whether the
9 privilege should apply or not, which involves us having to
10 get the various federal agencies involved.  The rules allow
11 them to have a say in the matter before the Court orders any
12 kind of production.
13    So let me ask the Relator, from their viewpoint, what
14 is the best way to tee this up?
15    I have the various letters from the agencies.  I don't
16 believe any claim has been made to the agencies directly,
17 but I'm also just trying to figure out what is the easiest
18 path to -- for us to address this issue?
19         MR. BRAGALONE:  Thank you, Your Honor.  Yes, I'll
20 address that.  This is Jeff Bragalone representing Relator.
21    Relator is asking for specifically the procedure that
22 Judge Fitzwater adopted in the Marketing Investors
23 Corporation versus New Millennium Bank case, which is a case
24 we cited to the Court.  Specifically, we would ask for three
25 things.

1    First, we would ask the Court to order Defendants to
2 actually provide copies of the withheld documents to the
3 respective agencies.
4    Second, we ask the Court to set a deadline for the
5 agencies to file a motion for protective order or otherwise
6 intervene in this action, to the extent they decide to
7 assert the bank examiner privilege as to any of the withheld
8 documents.
9    And finally, we ask that the Court order the Defendants
10 to disclose to Relator any supplemental privilege logs or
11 other correspondence with these agencies or communications
12 that relate to the bank examiner privilege but to date has
13 not been provided to Relator.
14    So in the Marketing Investors Corporation case, Judge
15 Fitzwater said, and I quote -- the order that was adopted
16 there says, quote, in order to allow the FDIC a proper
17 opportunity to assert and defend its bank examination
18 privilege, Defendant must first identify all documents
19 responsive to the discovery requests issued in its
20 possession, custody or control that it contends may be
21 subject to the FDIC's bank examination privilege.
22    It then must make those documents available to the FDIC
23 to allow it to determine whether the bank examination
24 privilege is applicable, and/or whether it intends to assert
25 its privilege as to each of those documents.  And that's the

1  quotation from that case.
2      Now, Relator assumed that when Defendants finally sent
3  notice to these agencies in late June that they also sent to
4  the agencies copies of the documents that they were
5  withholding.  But the agency letters, which we have just
6  received, note that Defendants haven't even provided copies
7  of the withheld documents to the agencies.  Instead, the
8  agencies apparently received only the same log of documents,
9  the same logs that Relator provided to the Court attached to
10 its July 2nd letter, where every document is generically
11 listed with a boilerplate claim that it is, quote, subject
12 to the bank examiner's privilege.
13     In fact, the Consumer Financial Protection Bureau in
14 its letter yesterday, which was attached to Mr. Leslie's
15 letter to the Court this morning -- it's Exhibit C -- they
16 say, quote -- they ask Mr. Leslie to promptly provide the
17 Bureau with all records identified for possible production.
18 And they go on to request that Mr. Leslie -- they say,
19 quote, in order to facilitate the Bureau's timely
20 involvement in this matter, the Bureau asks that you
21 immediately provide all identified records by FTT protocol
22 or another electronic production method.
23     Similarly, Exhibit B to Mr. Leslie's letter this
24 morning is a letter from the Federal Reserve Board.  The
25 Federal Reserve Board says, quote, the Board, a non-party to

1  this case, is not currently in the position to determine the
2  application of the privilege without having access to the
3  documents at issue.
4      So after Relator raised this issue with the Court back
5  in March and again at the May 28th hearing, we're very
6  surprised that Defendants once again haven't actually given
7  copies of the withheld documents to the agencies on whose
8  behalf they're purporting to assert the privilege.
9      This tactic obviously delays resolution of the issue
10 and the eventual production of the documents.  And,
11 unfortunately, we've seen this playbook before from
12 Defendants.  This is what they did back in March.  They
13 logged several documents that they withheld from discovery.
14 We had a hearing on March 17th.  The Court ordered that the
15 agencies had two weeks to make a decision as to whether they
16 were going to assert the privilege.
17     So after the Court did that and the agency actually got
18 a look at what Defendants had withheld from discovery under
19 the bank examiner privilege, the agency in that case was
20 unwilling to support the assertion of the bank examiner
21 privilege on even a single one of the documents that
22 Defendants withheld from discovery.  And when Relator
23 actually received copies of those documents, we could see
24 why.
25     Now, to be clear, Relator believes that the bank

1  examiner privilege here must take a back seat when compared
2  to the public policy concerns invoked by the FCA, and this
3  is consistent with Your Honor's order in the Ocwen case on
4  this very issue where the Court noted that this is a
5  discretionary privilege and the resolution of this depends
6  upon ad hoc considerations of competing policy claims, and
7  in that case the Court said, quote, the privilege should not
8  apply to highly relevant documents in an FCA case.
9       But I will tell Your Honor as an officer of this Court,
10 I have a responsibility, I think, to advocate for a fair
11 procedure, and I know that's what the Court wants as well.
12 And I don't believe the agencies are in a position to
13 respond or to make their arguments if the Defendants don't
14 actually provide them with the documents.
15      This is consistent with the approach that Judge
16 Fitzwater adopted in the Marketing Investors case.  And
17 importantly, the agencies also demonstrate that they
18 recognize the Court's authority in this instance and the
19 authority of this Court to control discovery in the case
20 before it.
21      For example, the OCC letter which was submitted as part
22 of the July 3rd letter from the Defendants, they say that
23 federal law prohibits disclosure of non-public OCC
24 information absent either, one, written permission from the
25 OCC, or two, a federal court order in a proceeding in which

8

1   the OCC has had an opportunity to appear and oppose
2   discovery.
3           Similarly, the Consumer Financial Protection Bureau in
4   its letter, which was attached as Exhibit C to Mr. Leslie's
5   letter this morning, they say, quote, CIP Bank is prohibited
6   from disclosing such records without prior Bureau approval,
7   unless such disclosure is required by a court order.
8           And I don't want to get into all the 2(e) arguments,
9   but I will tell you that many courts have rejected this
10  argument and have said that the Federal Rules of Civil
11  Procedure cannot be trumped by departmental regulations that
12  place arbitrary limits on a court's discovery powers.
13          So we know that production is already required by at
14  least two orders of the Court, the Court's initial discovery
15  order and also the Court's April 28th, 2020 order.  And
16  Defendants can't downplay the significance of this like they
17  tried to do in March because we know from the logs that
18  we're talking about over 3700 documents.
19          Nor is relevance here disputed.  In fact, the Federal
20  Reserve Board in its letter notes that the bank has
21  identified documents that are relevant but that contain
22  non-public OCC information.
23          Also, Defendants relied on these very investigations as
24  part of their motion to dismiss, so now they're trying to
25  use the bank examination privilege as a shield at the same

9

1  time that they're also using it as a sword.  But, Judge,
2  that's not a shield that belongs to Defendants to wield in
3  the first place.
4      So we've also learned from multiple agencies' letters
5  that just came in that there were supplemental privilege
6  logs that were sent on July 1st.  Both the FDIC letter,
7  which is Exhibit A, and the Federal Reserve Board letter,
8  which is Exhibit B to Mr. Leslie's letter this morning, note
9  that there was a July 1st letter with the updated privilege
10 log.
11     Now, I'm happy to be corrected, but I don't believe we
12 have been provided with that.  Also, there are references to
13 other communications with these agencies about the bank
14 examiner privilege, and we would ask that the Court order
15 that those be provided to us as well.
16     Finally, there's a suggestion by Defendants that
17 Relator, because we attempted to negotiate a deadline in the
18 amended schedule for resolution of this issue, that we are
19 somehow fine with the long delays that have been associated
20 here, but that's definitely not the case.
21     At no time did we ever suggest that it was acceptable
22 that Defendants delayed identifying this issue for five
23 months.  The documents should have been identified by
24 Defendants at the outset of discovery, and Relator would
25 have actually brought this to the Court sooner except we

1   didn't learn of it until late May, and at that time, as the
2   Court may recall from the hearing on May 28th, Defendants
3   were refusing to identify the government agencies involved.
4   They refused to say whether they had already provided the
5   agencies with the documents.
6        So in conclusion, we would ask that Defendants be
7   ordered to provide the underlying documents to the agencies
8   immediately, just as the agencies have requested.  They
9   actually requested it be sent by FTP protocol.  That's how
10  urgently they've asked for this.  And we would ask that be
11  done by this Monday, July 13th.
12       Then, in addition to that, the agencies have requested
13  copies of the Court's agreed protective orders.  Those
14  should be provided as well.  There's no reason they should
15  have been withheld so far.
16       Then we ask that the Court set a deadline which would
17  be at least two weeks from the agency's receipt of the
18  underlying documents for the agencies to appear and either
19  intervene or otherwise file a motion for protective order to
20  raise these issues before the Court.
21       I want to emphasize that contrary to Mr. Leslie's
22  letter, we are not ignoring the agencies' interest.  Rather,
23  we believe there should be a streamlined procedure, because
24  we don't want this issue to delay production of all these
25  documents.  We want to know that all the documents have been

1  produced. Nor should we be required to engage in some sort
2  of piecemeal negotiation with the agencies to get documents
3  that are in Defendant's possession.
4       Thank you, Your Honor.
5            THE COURT: Thank you. Response?
6            MR. SUSHON: Your Honor, it's Bill Sushon from
7  O'Melveny & Myers for the Defendants.
8       What I haven't heard from Mr. Bragalone, Your Honor, is
9  any reason why there should be a departure from the
10 regulations that ordinarily cover requests for discovery
11 from the regulators.
12      As Your Honor is aware, these regulations exist.
13 They're there to protect the regulator's interests in their
14 examinations and their deliberative processes, and these
15 processes are followed routinely in courts throughout the
16 country, have been endorsed by the Supreme Court of the
17 United States. And what we haven't heard is any reason why
18 they are not adequate here.
19      What we have told regulators all along, Your Honor, is
20 that they should be complying with the procedures that are
21 set forth in the Regulations, and what every single one of
22 the regulators said in the letters that we submitted to the
23 Court, Your Honor, is that it's incumbent on the Relator, as
24 the party that is seeking this discovery, to issue a request
25 to each of the regulators and to pursue the discovery.

1       And to help the regulators do that, the Relator is
2  supposed to -- and now I'm quoting from the Federal Reserve
3  Board's letter.  It is supposed to, quote, identify the CSI
4  sought, the relationship of the information to the issues in
5  the litigation, the requester's need for the information,
6  and the reason it cannot be obtained from any other source,
7  close quote.
8       And that's referring to 12 CFR Section 261.22B.  The
9  other regulators have parallel requirements, Your Honor.
10 And allowing this process to be followed appropriately here
11 will serve the interest of judicial economy and narrow the
12 issues that are in dispute, and it will ensure that the
13 Court is only required to rule on any documents where there
14 is a true dispute as to whether the privilege should yield
15 to any competing interests.
16      Now, we've heard Relator say a lot of things about us
17 trying to delay their getting access to bank examiner
18 privileged information.  That's not the case, Your Honor.
19      The last time that the parties were before the Court
20 there was a discussion about setting a deadline for
21 notifying the regulators, and we did precisely that by the
22 deadline that was discussed, which was June 22nd.
23      We sent letters to the regulators and sent them initial
24 privilege logs that were designed to let them know about the
25 number of documents and the information that we could

1 provide at that point in time.

2 We then followed up to the regulators on July 1st with
3 copies of the very same logs that we provided to Relator in
4 this case.

5 Relator has had those logs since June 26th. Relator
6 had those logs before the regulators had them.

7 So we did what we were supposed to do, which was to
8 notify the regulators, let them know that this dispute was
9 brewing. We let them know what documents were at issue.

10 We have offered to make the documents available to
11 them, and they have requested to receive copies of those
12 documents and we're ready to do that, Your Honor. It will
13 take a little bit of time to get that done because these
14 documents often have information in them that is privileged
15 as to CIT and that will have to be redacted.

16 Or there's information from one regulator in another
17 regulator's privileged document, and so we'll need to redact
18 those appropriately so that each regulator only has its own
19 information.

20 But we're prepared to move forward with this, Your
21 Honor. And there's no emergency that requires such a short
22 schedule as the Relator has requested.

23 I'll note that we have submitted a motion to amend the
24 Scheduling Order in this case, which provides for the close
25 of discovery on -- in February of 2021. Relator hasn't had

1 any issue with pushing the discovery deadline out that far.
2     In fact, as you'll note from our motion, Relators only
3 concern is that that may not be long enough for him to do
4 all the work that he needs to do with the loan files that he
5 has requested and that we've provided.
6     So even if it is a February 2021 discovery cutoff, that
7 provides more than six months, Your Honor, for Relator to go
8 through the appropriate 2(e) process that's been prescribed
9 by the regulators, get the discovery to which he's entitled,
10 and then use it in whatever way he deems appropriate in
11 terms of taking depositions or further discovery.
12     But there's plenty of time for all that, Your Honor,
13 and there's no reason to shortcut the regulator's procedures
14 for getting these documents.
15         THE COURT: Okay. Any response?
16         MR. BRAGALONE: Yes, Your Honor. Mr. Bragalone,
17 briefly.
18     The arguments regarding these administrative procedures
19 are not Defendant's to make. Mr. Sushon and Defendants have
20 literally no standing to come before the Court and argue
21 that we must follow certain administrative procedures.
22 Those are -- those arguments are reserved only to the
23 agencies.
24     I think the Court can see what's happening here.
25 They're -- the Defendants are again trying to delay our

15

1  access to these documents.  Even the agencies recognize the
2  authority of this Court and the authority of a court order
3  as an alternative to proceeding through administrative
4  channels.  And we can cite the Court at the appropriate time
5  to all of the authority that supports that.
6      But we would like to actually get the documents in the
7  hands of the agencies immediately, so there should be no
8  reason that can't happen.
9      And then we believe the Court should resolve the issue.
10 There's an initial issue as to whether these administrative
11 procedures trump the Federal Rules of Civil Procedure.  Many
12 courts have said no, that's not the case.
13     But then secondarily, even if the bank examiner
14 privilege would apply, as this Court held in the Ocwen case,
15 it must take a back seat to the considerations of the
16 Federal False Claims Act and the issues that are also
17 present in this case.
18     So we believe that the most efficient way to resolve
19 this is in a single proceeding, allow the agencies ample
20 time to review the documents, which we think two weeks is
21 sufficient.  But if the Court believes more is necessary,
22 we're certainly willing to do this in whatever reasonable
23 fashion gives the agency the proper notice.
24     But the arguments that Mr. Sushon made he has no
25 standing to bring before the Court.  They're not his

16

1  arguments to make.  That's up to the agency.  And if prior
2  experience is a predictor here, what's likely to happen is
3  these agencies are going to get these documents.  They're
4  going to shake their head wondering how in the world
5  Defendants decided to identify all of these as covered by
6  the bank examiner privilege.  And I predict that the vast
7  majority of these documents there will not even be an
8  assertion of a privilege, because at this point there is no
9  assertion of a privilege.  That is only for the agencies to
10 do, and the agencies obviously have to see the documents
11 before they can decide whether they agree with the decision
12 of CIT to withhold these documents.
13       So we believe that the procedure that Judge Fitzwater
14 adopted is certainly a streamlined procedure and that's
15 appropriate for resolving these issues in a timely fashion.
16       And the schedule, Your Honor, I'm not prepared to go
17 into reasons why we have issues with the schedule, but
18 clearly, all parties agreed that the schedule must be
19 extended.
20       Our belief as Relator was that we would now have all
21 the documents in our possession so that we could look
22 forward to our expert analysis and to starting depositions.
23 Now we can't currently have our experts review the documents
24 because we know that they're incomplete.
25       And we'll respond appropriately to the Scheduling Order

1  and perhaps we can submit an agreed Scheduling Order to the
2  Court. I'm sort of hopeful of that.
3      But we shouldn't use that as a reason to further
4  postpone by six months or more our access to these documents
5  when you have two court orders that require Defendants to
6  produce these by now already.
7          THE COURT: Okay. So here's what I'm going to do is
8  I wanted this call to kind of flesh this out, because there are
9  two methods of approach here. I am going to go with the
10 approach set out by the Relator as it relates to what Judge
11 Fitzwater did.
12     And, Mr. Bragalone, I would ask you to prepare an order
13 for the Court, and you can submit it to the Court. As soon
14 as you get it to me, I'll certainly get an order entered.
15     And I will hear from the defense if you want to talk
16 about -- I know Mr. Bragalone has set out some dates, so I
17 am going to follow that procedure, but if you want to
18 comment on the timing, go ahead and speak now about that.
19         MR. SUSHON: Certainly. Thank you, Your Honor. Bill
20 Sushon from O'Melveny & Myers again.
21     July 13th simply is not enough time for us to redact
22 documents if we're going to provide them to the regulators
23 so that we can protect each regulator's privilege from the
24 other regulators and to protect CIT's privilege from the
25 regulators.

18

1 I think that we probably would need about two weeks to
2 get those redactions completed, and then we would be able to
3 send those documents to the regulators.
4 I do know that the regulators take the view that from
5 there, two weeks for them to make a decision as to whether
6 they want to intervene or seek a protective order, in their
7 view, is not enough time.
8 CFTPD in its letter, which we submitted to the Court,
9 said that it would need 60 days to make that decision. You
10 know, I am put in an odd position of trying to, you know,
11 advocate for the regulators when they're not present, but I
12 do know they take the view it would take them much longer.
13 They are not equipped to do document review the way large
14 law firms are, and so they would need more time for that.
15 And I think, you know, in view of CFPB's request for 60 days
16 as a guideline, that that's their view of it and not
17 necessarily mine.
18         THE COURT: Mr. Bragalone, would you like to respond
19 on the issue of timing?
20         MR. BRAGALONE: Your Honor, thank you, briefly. This
21 is Mr. Bragalone.
22 So my recollection is that the CFPB has been provided a
23 log of only 127 documents. It's -- it's difficult for me to
24 understand even a federal agency taking two months to review
25 127 documents.

1  I can't speak to the period of time that Mr. Sushon
2  says he needs to redact the documents. I can only say that
3  we've been asking for this since the very beginning of the
4  year.
5  If -- if it can be done in a shorter period of time, we
6  would prefer that obviously, but I do believe that a two
7  week period or even a three week period is more than
8  adequate to allow these agencies to respond, especially
9  when, for example, the CFPB has literally only 127 documents
10 to review.
11         THE COURT: Okay. So, Mr. Bragalone, if you can
12 submit us an order. As soon as you get it into the Court in
13 some kind of editable form, then I'll decide the time limits.
14 I'll reflect on that and I'll enter the order. So how soon can
15 you get me an order?
16         MR. BRAGALONE: We will get it to you this afternoon,
17 Your Honor. And should we put in our suggested dates or --
18         THE COURT: You can put your suggested dates in it
19 and then I'll decide. That's why I want it editable and I'll
20 decide. And then if you get it to us today, I'll try to enter
21 an order by tomorrow. Okay?
22         MR. BRAGALONE: Thank you very much, Your Honor.
23         THE COURT: Or if you don't get it to us until
24 tomorrow, it will be Monday.
25  So anything else I can do for the Relator today?

```
                                                                  20
 1            MR. BRAGALONE:  Not from Relator, Your Honor.
 2   Thank you.
 3            THE COURT:  What about for defense, anything else I
 4   can do for y'all?
 5            MR. SUSHON:  This is Bill Sushon.  No, thank you,
 6   Your Honor.
 7            THE COURT:  Okay.  Y'all have a great day.  Thank
 8   you.
 9            MR. SUSHON:  Thank you.
10
11
12
13
14
15
16
17
18
19
20
21   I certify that the foregoing is a correct transcript from
22   the record of proceedings in the above-entitled matter.
23
24   _____       _____
     Jan Mason                     Date
25
```