# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW MITCHELL, AND ANDREW MITCHELL, Individually, | § § § |
| | §   Civil Action No. 4:14-CV-00833 |
| *Plaintiffs/Relator,* | § § § Judge Mazzant |
| v. | § § |
| CIT BANK, N.A., d/b/a ONEWEST BANK, and CIT GROUP, INC., | § § § § |
| *Defendants.* | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege (Dkt. #202). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **granted in part** and **denied in part.**

### BACKGROUND

The background of this lawsuit is more thoroughly set forth in the Court's Memorandum and Order on CIT's motion to dismiss. *See United States ex rel. Mitchell v. CIT Bank,* No. 4:14-CV-00833, 2020 WL 2126397, at *1–2 (E.D. Tex. May 5, 2020). Highly summarized, this case arises out of allegations made by Relator Andrew Mitchell that CIT Bank, N.A., d/b/a OneWest Bank and CIT Group, Inc. (collectively referred to as "CIT") violated the False Claims Act ("FCA") by submitting false claims to the government to obtain payment under three different government loan-modification programs. Mitchell contends that CIT certified to these agencies that it was in material compliance with relevant laws and regulations, while CIT knew it was not. Allegedly, these false certifications caused the government to make payments to CIT that it would not have otherwise made.

Against this backdrop, the Court now turns to the present dispute. Mitchell seeks to compel CIT to produce two broad categories of communications: 1) those between CIT and an independent consultant and 2) those between CIT and the U.S. government (Dkt. #202 at p. 4). CIT has withheld these communications on the basis that they are protected by the work-product and attorney-client privileges (Dkt. #207 at p. 2). As grounds for its motion, Mitchell argues that CIT has not met its burden to show that any underlying documents are privileged, and any privilege has otherwise been waived (Dkt. #202 at p. 4).

More specifically, the first category of documents Mitchell seeks are communications and documents exchanged between CIT and its independent consultant, Navigant Consulting and its capital advisory affiliate, Navigant Capital Advisors (collectively "Navigant") (Dkt. #202 at p. 5). The documents relate to an independent foreclosure review CIT undertook pursuant to a 2011 Consent Order with the Office of Thrift Supervision ("OTS") (Dkt. #175, Exhibit 1 at p. 1). Under the terms of the Consent Order, CIT was required to "retain an independent consultant acceptable to the Regional Director to conduct an independent review of certain residential foreclosure actions regarding individual borrowers with respect to the Association's mortgage servicing portfolio" (Dkt. #175, Exhibit 1 at p. 15). CIT retained third-party Navigant to perform the independent foreclosure review (Dkt. #60, Exhibit 9 at p. 2). As part of its engagement with Navigant, CIT alleges that it shared various attorney-client privileged and work-product materials with Navigant.

The second category of documents Mitchell seeks are all communications between CIT and the U.S. government (Dkt. #202 at p. 4). Mitchell's main contention is that CIT waived any privilege over these communications by making the government's knowledge an issue in the present case (Dkt. #202 at pp. 8–10). Specifically, CIT has contested the materiality element of the False Claims Act, alleging that Mitchell's claims must fail because the government had full

knowledge of CIT's fraud but continued to make payments anyway (Dkt. #178 at pp. 26–28). Mitchell claims it would be unfair to allow CIT to proffer these defenses while simultaneously allowing it to claim privilege over the communications that bear significantly on what the government knew (Dkt. #202 at p 10).

On August 20, 2021, Plaintiff filed its Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege (Dkt. #202), currently before the Court. On August 30, 2021, CIT filed its response (Dkt. #207).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #162 at p. 3). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery."

FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of

the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

### I.  Communications and Documents between CIT and Navigant

In its motion to compel, Relator seeks: 1) all withheld communication between CIT and Navigant (either as author or recipient); 2) all withheld communications where Navigant was copied on the communication; and 3) all withheld documents shared between CIT and Navigant (Dkt. #202 at p. 16).

#### A. Applicability of 12 U.S.C. § 1828(x)

The dispute over communications and documents between CIT and Navigant primarily concerns the applicability of 12 U.S.C. § 1828(x), an anti-waiver statute in the banking regulation context. Under § 1828(x), a bank's submission of any information to

> any Federal banking agency, State bank supervisor, or foreign banking authority for any purpose in the course of any supervisory or regulatory process of such Bureau, agency, supervisor, or authority shall not be construed as waiving destroying, or otherwise affecting any privilege such person may claim with respect to such information under Federal or state law as to any person or entity other than such Bureau, agency, supervisor, or authority.

12 U.S.C. § 1828(x).

CIT argues that the anti-waiver statute embodied by 12 U.S.C. § 1828(x) protects the communications and documents it shared with Navigant from disclosure (Dkt. #207 at p. 6). Mitchell contends that the statute does not apply, and CIT waived any claim of privilege by sharing

information with Navigant, an independent third-party (Dkt. #202 at p. 9). Accordingly, the court first evaluates whether § 1828(x) protects the subject communications from waiver.[1]

As a starting point, CIT's sharing of information with Navigant is not protected under the plain terms of the statute because Navigant is not a "Federal banking agency, State Bank Supervisor, or foreign banking authority." *See* 12 U.S.C. § 1828(x). Although CIT acknowledges this, it nevertheless argues that its sharing of information with Navigant falls under the purview of the statute because Navigant was acting as a "representative" for the Office of the Comptroller of the Currency[2] ("OCC") (Dkt. #207 at pp. 6–8). For this argument to be successful, CIT must overcome two hurdles: 1) it must show the statute extends to third-party "representatives," even though the text does not say so, and 2) it must show Navigant was acting as a "representative" of the OCC. CIT cannot do either. Therefore, CIT's overbroad interpretation of the explicit language of the statute must be rejected.

To determine the meaning of a statute, the starting point is the language of the statute itself. *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). But here, where the statute's language is plain, it is also where the inquiry should end since "the sole function of the courts is to enforce [a statute] according to its terms. *Id.* (citing *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). The statute in the present case is clear. By its very terms, it applies only to information submitted to "any Federal banking agency, State bank supervisor, or foreign banking authority." *See* 12 U.S.C. § 1828(x). It does not include information shared between banks and third-party consultants, even if a federal banking agency requires a bank to retain the independent third party.

---

[1] The Court acknowledges that no other court has examined § 1828(x) in this context—specifically, whether the statute extends to third-party "representatives" of federal banking agencies.
[2] On July 20, 2011, the OCC succeeded the OTS.

Further, under Federal Rule of Evidence 501, "The common law . . . governs a claim of privilege unless [a federal statute] provides otherwise." FED. R. EVID. 501. CIT presents no common law independent consultant-government regulator privilege, and § 1828(x) does not create one. Therefore, appeals to federal common law cannot overcome the plain text of the statute. Had Congress intended to include independent third parties in the statute, it could have done so. *See Bostock v. Clayton Cnty.*, 140 S.Ct. 1731, 1749 (2020) ("The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration.").

In addition, CIT's argument that the non-waiver statute does not need to explicitly cover third parties like Navigant because "privilege law already provides that sharing privileged information with the agents of a party entitled to see the privileged information is not a waiver" is misplaced (Dkt. #207 at p. 8). CIT's snippets of quotes from privilege law apply only in the context of the attorney-client and work-product privileges. If there were a common law privilege that protected communications between a party and an independent auditor or consultant, CIT would not need to invoke the protection of section 1828(x)—it could simply invoke the applicable attorney-client or work-product privilege. But there is not. *See Couch v. United States*, 409 U.S. 322, 335 (1973) ("[N]o confidential accountant-client privilege exists under federal law."). Therefore, CIT's argument that general privilege law should be transposed to a specific statute cannot be supported.

Even if general privilege law principles could be applied to overcome the plain meaning of the statutory text, CIT's argument would still fail. For purposes of the statute, Navigant cannot both be a representative of the OCC and a representative of CIT. But for CIT's argument to be successful, that would have to be the case. In other words, for the anti-waiver statute to extend to

Navigant even though the statute is limited to governmental banking agencies, CIT argues that Navigant was acting as a representative of the *OCC* (Dkt. #207 at p. 6). But its reasoning as to why the statute extends to third parties like Navigant—i.e. its general reliance on privilege law—only makes sense if Navigant is considered a representative of *CIT*. That is because, under the common law, the extension of the attorney-client and work-product privileges to third parties applies only if the third party is a "representative" of the client—here, CIT. *See Nguyen v. Excel Corp.,* 197 F.3d 200, 206 (5th Cir. 1999) ("A corporate client has a privilege to refuse to disclose, and prevent its attorneys from disclosing, confidential communications between its representatives and its attorneys when the communications were made to obtain legal services."); *See also In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994) ("Communications can . . . be privileged if they are between a *representative* of the client and the client's lawyer.") (emphasis added). Accordingly, CIT's positions cannot be reconciled. Consequently, CIT's argument that the anti-waiver statute protects communications with third parties like Navigant is erroneous.

### B. Waiver of Privileges Under Common Law

Because § 1828(x) does not independently protect the exchange of privileged communications and documents between CIT and Navigant from waiver, the inquiry is not over. The Court must still examine common law privilege and waiver principles to determine which documents and communications between CIT and Navigant are privileged and whether a waiver of privilege resulted. Although the parties make little distinction between the attorney-client and attorney work-product privilege in their briefings, they must be examined separately.

1. **Attorney-Client Privilege**

CIT argues its communications with Navigant are privileged under the attorney-client privilege and that the disclosure of its independent attorney-client privileged information with Navigant did not result in a waiver (Dkt. #207 at p. 2).

    i. **Existence of the Attorney-Client Privilege as to Communications Between CIT and Navigant**

Contrary to CIT's belief, the attorney-client privilege does not extend to communications between CIT and Navigant. Under federal common law, the elements of the attorney-client privilege are: (1) a confidential communication; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion, legal services, or assistance in a legal proceeding. *See United States v. Robinson*, 121 F.3d 971, 974 (5th Cir.1997). In other words, the attorney-client privilege does not attach to every communication between a client and counsel, but "only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976).

Here, an essential element of the attorney-client privilege is missing—the communications between Navigant and CIT were not made for the primary purpose of obtaining legal advice. To the contrary, Navigant's Statement of Work contains several explicit disavowals of any attorney-client relationship (Dkt. #207, Exhibit 5). For example, Navigant agreed that it would "retain and rely on independent counsel to provide legal advice . . ." (Dkt. #207, Exhibit 5 at p. 6). Further, Navigant "agree[d] not to obtain legal advice (or other professional services) in conducting the Foreclosure Review from One West's inside counsel, or from outside counsel retained by OneWest or its affiliates . . ." (Dkt. #207, Exhibit 5 at p. 7). Additionally, Navigant noted that in performing the Foreclosure Review, it would "not be rendering legal advice and/or rendering a legal opinion" (Dkt. #207, Exhibit 5 at p. 6). Accordingly, any communications between Navigant and CIT were

*not* made for the primary purpose of seeking legal services. Therefore, no communications between Navigant and CIT are protected under the attorney-client privilege.

### ii. Waiver of Attorney-Client Privilege as to Underlying Documents

With respect to any attorney-client privilege that CIT claims over any underlying documents or communications it shared with Navigant, it was waived. To retain the attorney-client privilege, "the confidentiality surrounding the communications made in that relationship must be preserved." *United States v. El Paso Co*., 682 F.2d 530, 539 (5th Cir. 1982). Hence, disclosure of privileged communications to a third party generally eliminates the confidentiality of the attorney-client and serves to waive the privilege. *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir. 1985). However, "[a]n exception to this rule exists for third parties who assist an attorney in rendering legal advice." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 134 (E.D. Tex. 2003). Thus, the attorney client privilege "must include all other persons who act as the attorney's agents." *Id*. (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d. Cir. 1961)).

Here, CIT shared its attorney-client privileged information with Navigant—a third-party hired to independently identify any instances of improper foreclosures by CIT (Dkt. #207, Exhibit 5 at 7). Any communications or documents exchanged between CIT and Navigant were exchanged for this limited purpose. Further, as noted previously, CIT and Navigant explicitly disclaimed that either would rely on the other for legal advice. This is significant because the narrow exception to the non-waiver of attorney-client privilege only exists for third parties *who assist an attorney in rendering legal advice. See id.*; *see also Roe v. Catholic Health Initiatives Colorado*, 281 F.R.D 632, 637 (D. Colo. 2012)* *("The attorney-client privilege can extend to communications between representatives of the client or between the client and a representative of the client, *if the*

10

*communication was made in confidence for the primary purpose of obtaining legal advice*.") (emphasis added).

While CIT contends in its August 4, 2021 Letter to the Court that "parties can freely share their attorney-client privileged information with their own agents without fear of waiver," this is only partly true. The classification as an "agent" of the attorney or client is not sufficient, in and of itself, to sustain the attorney-client privilege. *Ferko,* 218 F.R.D. at 135. The critical inquiry is whether the representative furthers the provisions of legal services to the client. *BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, 614 F. App'x 690, 704 n.22 (5th Cir. 2015). No evidence suggests Navigant performed tasks relevant to obtaining legal advice. To the contrary, the scope of work between Navigant and CIT—both in terms of their written agreement and the actual work performed—did not involve giving, receiving, or relying on either party for legal advice.

Accordingly, Mitchell is entitled to: 1) any communications between Navigant and CIT over which CIT has claimed the attorney-client privilege; and 2) any underlying documents sent by CIT to Navigant that CIT has withheld based on the attorney-client privilege.

### 2. Work-Product Privilege

The same general arguments made by both parties apply in the work-product privilege context. CIT alleges that the discovery sought between CIT and Navigant is protected by the attorney work-product privilege and thus not discoverable (Dkt. #207). Mitchell contends that documents and communications exchanged with Navigant are not subject to the work-product privilege and that any privilege has otherwise been waived (Dkt. #202 at pp. 6 and 10).

### i.   Existence of the Work-Product Privilege as to Communications between CIT and Navigant

No communications between Navigant and CIT are protected by the attorney work-product privilege. Rule 26(b)(3) of the Federal Rules of Civil Procedure protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . ." FED. R. CIV. P. 26(b)(3). Rule 26(b)(3) does not require that the document be prepared by the attorney, but rather, also protects from discovery documents prepared by a party or party's agent as long as they are prepared in anticipation of litigation. *United States v. Nobles*, 422 U.S. 225, 238–39 (1975). Excluded from the work-product doctrine are materials assembled in the ordinary course of business or pursuant to public requirements unrelated to litigation. *El Paso*, 682 F.2d at 542. If the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation. *Glob. Oil Tools, Inc. v. Barnhill*, 2013 WL 1344622, at *6 (E.D. La. April 13, 2013) (citations omitted).

Here, any communications between CIT and Navigant were not made for the purpose of strategizing about litigation but were made for the purpose of facilitating the independent foreclosure review Navigant was retained to perform. Further, as previously pointed out, Navigant and CIT explicitly disclaimed any notion that either would be rendering any legal advice (Dkt. #207, Exhibit 5 at 6). Therefore, it cannot be said that the primary motivating purpose behind the communications was to aid CIT in possible future litigation—especially since Navigant was conducting the review independent of CIT. Accordingly, any communications between Navigant and CIT that do not implicitly or explicitly reference underlying CIT work product are not protected by the attorney work-product privilege.

It does not follow, however, that an otherwise valid assertion of work-product protection is waived with respect to an attorney's own work product simply because the attorney provides the work product to a third party. Therefore, the Court must also consider Mitchell's claim that CIT's work-product privilege was waived as to underlying privileged documents given to Navigant.

### ii.     Waiver of Work-Product Privilege

The work-product privilege exists to "promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir.1989). Unlike the attorney-client privilege, "the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege." *Id*. Instead, disclosure only waives the work-product privilege if it is "given to adversaries or is treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 WL 4432569, * 3 (E.D. Tex. 2009) (citing *Ferko v. NASCAR*, 219 F.R.D. 396, 400–01 (E.D. Tex. 2003). Further, unlike the attorney-client privilege, the burden of proving waiver of work-product immunity falls on the party asserting waiver. *Ferko*, 218 F.R.D. at 136.

Here, Mitchell has the burden of proving waiver, yet he has shown neither that Navigant was an adversary of CIT nor that sharing documents with Navigant increased the likelihood that an adversary would come into possession of the material. Indeed, Mitchell hardly addresses waiver in this context. Even so, according to the Statement of Work, Navigant was an independent contractor—not a litigation adversary—hired to identify any instances of improper foreclosures (Dkt. #207, Exhibit 5 at pp. 7 and 50). Further, Navigant was required to keep CIT's information confidential (Dkt. #207, Exhibit 5 at p. 50). This confidentiality provision precluded any

significant risk of disclosure to a potential litigation adversary. While the confidentiality provision included exceptions for disclosures required by the OCC and necessary for Navigant to perform its role, Mitchell has not shown how these exceptions increased the likelihood that a litigation adversary would come into possession of the material.

### iii. Underlying Documents CIT Claims are Protected by the Work-Product Privilege

Because the Court found no waiver resulted through disclosure to Navigant, the Court must now consider Mitchell's argument that CIT has not met its burden to show that the underlying documents are protected by the work-product privilege.

When a party asserts a claim of privilege as to otherwise discoverable information, "the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." FED. R. CIV. P. 26(b)(5). Blanket assertions of privilege are unacceptable, as the Court and other parties must be able to test the merits of a privilege claim. *El Paso Co.*, 682 F.2d at 541. "The Federal Rules essentially dictate that when a party claims privilege, it must provide a log that provides facts that 'would suffice to establish each element of the privilege or immunity that is claimed.'" *SmartPhone Tech. LLC v. Apple, Inc.*, No. 6:10-cv-74 LED-JDL, 2013 WL 789285, at *3 (E.D. Tex. Mar. 1, 2013).

The Court finds that the dispute as to whether any underlying documents sent from CIT to Navigant are protected by the work-product privilege is not ripe for consideration. *See* Local Rule CV-7(h). According to CIT, the parties have not met and conferred on this issue (Dkt. #207 at p. 13). Mitchell has not contested this assertion, and the Court has no reason to believe it is untrue. Therefore, for remaining disputes as to underlying documents protected by the work-product

privilege, the parties shall meet and confer. After this, to the extent disagreements remain as to particular documents, Mitchell shall file a renewed motion to compel that identifies the specific documents that are still at issue. CIT's response shall include submitting the identified documents for *in camera* review.

## II. Communications between CIT and any Government Agency

In his Motion to Compel, Mitchell also requests that the Court compel production of all withheld communications between CIT and any U.S. government agency (Dkt. #202). Mitchell contends that CIT waived any claim of privilege over these communications by putting the government's knowledge "at issue" through CIT's defenses (Dkt. #202 at p. 11). Specifically, CIT has made the government's knowledge an issue by arguing that Mitchell's claim does not meet the materiality element of the False Claims Act—contending any alleged false statements by CIT were not material to the government's payment decision because the government knew of their falsity and continued to make payments anyway (Dkt. #178 at pp. 26–28). CIT responds that the selective waiver doctrine does not apply because it has not affirmatively relied on privileged communications with the government to support its defenses (Dkt. #207 at p. 10).

Waiver of the attorney-client or work-product privileges occurs where "a party has asserted a claim or defense that explicitly relies on the existence or absence of the very communications for which he claims a privilege." *In re Burlington Northern, Inc.*, 822 F.2d 518, 533 (5th Cir. 1987). In other words, "when a client uses confidential information against his adversary, it cannot simultaneously use the privilege as a shield." *In re Schlumberger Tech Corp.*, 818 Fed. App'x 304, 307 (5th Cir. 2020) (per curiam) (internal quotations omitted). The "at issue" waiver is rooted in fairness—when the holder places the information at issue to his own benefit, allowing "the

privilege to protect against disclosure of such information would be manifestly unfair to the opposing party." *Conkling v. Turner*, 883 F.2d 431,434 (5th Cir. 1989).

The disagreement between CIT and Mitchell on the selective waiver doctrine centers on how broadly the doctrine should be construed here. Mitchell urges the court to adopt an expansive view of the doctrine. In effect, Mitchell argues that selective waiver should apply when a withholding party asserts a claim or defense that places the documents at issue, regardless of whether the withholding party actually relies on any privileged communications to support its claim or defense. By contrast, CIT contends that at-issue waiver occurs only where a party affirmatively relies on a communication over which it claims privilege to establish the party's claim or defense. The Court agrees with CIT's position.

The Fifth Circuit has rejected a broad approach to at-issue waiver and has made clear that "asserting a claim [or defense] to which privileged material is merely relevant does not waive the privilege." *In re Schlumberger*, 818 Fed. App'x at 307. ("While privileged communications may have some bearing on [Defendant]'s beliefs about its compliance, [Defendant] has not relied on attorney-client communications to establish its good-faith defense.") (citations omitted.). Instead, for at-issue waiver to occur, the client "must *rely* on privileged advice from his counsel to make his claim or defense." *Id*. At 561 (citations omitted).

While CIT has made the government's knowledge an issue by contesting the materiality element of the False Claims Act, CIT has not affirmatively relied on any privileged communications to support its defenses. Instead, CIT has relied solely on non-privileged information to support its general allegations that the government had knowledge of the alleged conduct underlying Mitchell's claims (Dkt. #178 at pp. 26–28). It would be different if CIT sought to prove the government's knowledge with privileged communications. But that is not the case

here. Further, "fairness" does not dictate a different outcome—as CIT has not wielded privileged information as a sword, protecting against such disclosure of information is not manifestly unfair.

Accordingly, the Court rejects Mitchell's assertion that CIT has waived its privileged communications with the government under an at-issue theory. CIT has not raised any defenses that explicitly rely on the existence of any privileged communications.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel Production of Documents Improperly Withheld on the Basis of Privilege (Dkt. #202) is hereby **GRANTED in part and DENIED in part.** Defendant shall produce all items in accordance with this order by 5:00 p.m. on October 7, 2021.

In summary, CIT shall produce all communications and documents exchanged between CIT and Navigant (either where Navigant was the author, recipient, or copied on the communication) that CIT has withheld on the basis of the attorney-client privilege and that are also not subject to another privilege. CIT shall also produce all communications between Navigant and CIT that CIT has withheld on the basis of attorney work-product that do not implicitly or explicitly reference underlying CIT work product. Further, the parties shall meet and confer to discuss remaining disputes as to underlying documents CIT sent Navigant that it claims are protected by the work-product privilege.

**IT IS SO ORDERED.**

**SIGNED this 28th day of September, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE