# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW MITCHELL, AND ANDREW MITCHELL, Individually, | § § § § | |
| | § | |
| *Plaintiffs/Relator,* | § § | Civil Action No.  4:14-CV-00833 |
| v. | § § | Judge Mazzant |
| | § | |
| CIT BANK, N.A., d/b/a ONEWEST BANK, and CIT GROUP, INC., | § § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Relator's Motion for Leave to Amend the Second Amended

Complaint (Dkt. #242).  Having considered the motion and the relevant pleadings, the Court finds

that the motion should be **GRANTED**.

## BACKGROUND

This is a *qui tam* case with a long history before this Court.  The background is more

thoroughly set forth in the Court's Order on Defendants' Motion to Dismiss. *See U.S. ex rel.*

*Mitchell v. CIT Bank*, No. 4:14-cv-00833, 2020 WL 2126397, at *1–2 (E.D. Tex. May 5, 2020).

Highly summarized, Relator Andrew Mitchell ("Mitchell") alleges that Defendants, CIT Bank,

N.A. d/b/a OneWest Bank and CIT Group Inc., (collectively "OWB") violated the False Claims

Act by making false certifications to the government to obtain payment under three different

government loan-modification programs.   These three programs were Treasury's Home

Affordable Modification Program ("HAMP"), the Department of Housing and Urban

Development ("HUD")'s Federal Housing Administration ("FHA") mortgage insurance program

("FHA-HAMP"), and the Department of Veteran Affairs ("VA")'s mortgage insurance program ("VA-HAMP").

In the present motion, filed on November 29, 2021, Mitchell requests leave to file his Third Amended Complaint, which adds allegations concerning OWB's implied false certifications to the VA (Dkt. #242 at p. 1).[1] On December 14, 2021, OWB filed a response (Dkt. #251).  On December 22, 2021, Mitchell filed a reply, (Dkt. #253), and a week later OWB filed its sur-reply (Dkt. #258).

## LEGAL STANDARD

"When a trial court imposes a scheduling order, Federal Rules of Civil Procedure 15 and 16 operate together to govern the amendment of pleadings." *Tex. Indigenous Council v. Simpkins*, 544 F. App'x. 418, 420 (5th Cir. 2013).  Rule 15(a) governs a party's request to amend its pleading before a scheduling order's deadline to amend passes.  *See id.*  Rule 16(b)(4) governs a party's request to amend its pleading after the deadline to amend passes.  *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x. 866, 868 (5th Cir. 2010) (citing *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003)).

Rule 15(a) provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served.  After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave."  *Id.*  Rule 15(a) instructs the court to "freely give leave when justice so requires."  *Id.*  The rule "'evinces a bias in favor of granting leave to amend.'"  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)).  But leave to amend "is not automatic."  *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp. 2d 704, 718 (S.D. Tex. 2000) (citing

---

[1] The proposed Third Amended Complaint also removes allegations related to OWB's improper capitalization of delinquent principal payments and future escrow amounts.

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).  Whether to grant leave to amend "lies within the sound discretion of the district court." *Little v. Liquid Air Corp.*, 952 F.2d 841, 845–46 (5th Cir. 1992).  A district court reviewing a motion to amend pleadings under Rule 15(a) considers five factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment.  *Smith v. EMC*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Rule 16(b)(4) provides that a scheduling order issued by the Court "may be modified only for good cause and with the judge's consent."  *See Agredano v. State Farm Lloyds*, No. 5:15-CV-1067-DAE, 2017 WL 5203046, at *1 (W.D. Tex. July 26, 2017) (citing *E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012)) (stating, "a party seeking leave to amend its pleadings after a deadline has passed must demonstrate good cause for needing an extension.").  "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"  *S&W Enters., L.L.C.*, 315 F.3d at 535 (quoting 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1522.1 (2d ed. 1990)).  In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice."  *Id.* (quoting *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).  Only after the movant demonstrates good cause under Rule 16(b)(4) does "the more liberal standard of Rule 15(a)" apply to a party's request for leave to amend.  *Id.*

## ANALYSIS

Mitchell seeks leave to file his Third Amended Complaint.  In the proposed Third Amended Complaint, Relator alleges for the first time that OWB made "*implied* false certifications" to the VA regarding OWB's "compliance with the laws, regulations, and guidance governing VA-HAMP, while knowing that it did not have a functional VA-HAMP program" (Dkt. #242, Exhibit B ¶¶ 172–73).  OWB opposes the motion, arguing it should be denied for at least two reasons (Dkt. #251 at p. 4).  First, OWB contends that Mitchell's proposed allegations "cannot salvage his VA-related claims . . . ." (Dkt. #251 at p. 4).  Second, OWB asserts Mitchell's "bid to amend his complaint comes far too late and would prejudice CIT" (Dkt. #251 at p. 4).

Pursuant to the Scheduling Order, Mitchell's deadline to file amended pleadings expired on April 23, 2020 (Dkt. #72).  On November 29, 2021—more than eighteen months after this deadline—Mitchell moved for leave to amend (Dkt. #242).  Therefore, as Mitchell acknowledges, he must demonstrate good cause under Rule 16(b)(4) before the Court turns to the more liberal Rule 15(a) standard. *S&W Enters., L.L.C.*, 315 F.3d at 535.  In determining whether good cause exists, courts consider a four-part test: "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *Id.* (quoting *Reliance Ins. Co.*, 110 F.3d at 257).  The Court examines these factors in turn.

### I.      Whether Good Cause Exists Under Rule 16(b)(4)

#### a.   The Explanation for the Failure to Timely Move for Leave to Amend

Mitchell contends that he "had no reason to believe that it would be necessary to add allegations of implied false certification before he learned that Defendants and their agent failed to preserve evidence of their express certifications to the VA" (Dkt. #253 at p. 2).  More

specifically, Mitchell explains that he only learned in September 2021 through his second set of interrogatories that OWB used Claims Recovery Financial Services LLC ("CRFS") to manage its VA claims process (Dkt. #242 at p. 9).   Upon learning this information, Mitchell claims he promptly issued a subpoena to CRFS (Dkt. #242 at p. 10).  But—despite OWB's awareness of this lawsuit since 2014—Mitchell "learned that CRFS had deleted all of [OWB]'s VA claim files prior to 2014" (Dkt. #242 at p. 10).

Thus, according to Mitchell, this timing is indicative of his diligence because "it did not become apparent until November 2021 that Relator would need to assert a claim of implied certification given Defendant's failure to preserve evidence of [OWB]'s express certifications to the VA" (Dkt. #242 at p. 13).   Further, as evidence that OWB "must have made [express] certifications to the VA," Mitchell points to certifications that services administrators were required to make when making manual submissions in the VA Loan Electronic Reporting Interface ("VALERI") (Dkt. #253 at p. 2).

OWB strongly refutes Mitchell's account, arguing that Mitchell "has not shown he could not have pleaded an implied certification theory before the April 30, 2020 deadline to amend his complaint" (Dkt. #251 at p. 12).  In fact, OWB asserts that Mitchell "cannot make this showing" because "Relator always knew that the VA program required no compliance certification" (Dkt. #242 at p. 12).  Accordingly, Mitchell's spoliation theory is a "red herring" (Dkt. #251 at p. 14) and "contrary to the facts" (Dkt. #258 at p. 5).

What is more, OWB points out that CRFS produced 11 claim files from the post-2014 period "and none of them included a certification of any kind" (Dkt. #258 at p. 5).   Further, "CRFS's Rule 30(b)(6) representative testified that the claim files for prior years would be the same" and the "absence of a compliance certification is also consistent with publicly available

materials" and "Mitchell's own sworn testimony" (Dkt. #258 at p. 5).  Thus, according to OWB, Mitchell's theory that CRFS "'must have' had compliance certifications that were spoliated" cannot excuse his tardiness because no express certifications exist, and the most basic diligence would have made this clear (Dkt. #258 at p. 3).  Further, OWB contends that Mitchell has not identified any "compliance certification[s]," since the alleged certifications made in VALERI by OWB were "claims certification[s]"—not compliance certifications (Dkt. #258 at p. 5). Accordingly, the claims certifications Mitchell identified "are irrelevant" (Dkt. #258 at p. 5).

After considering the parties' arguments, the Court finds that the first factor weighs in favor of finding good cause.  Mitchell's explanation stands in contrast to movants in other cases who "offered no explanation for [their] failure[s] to timely move for leave." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008); *see, e.g.*, *S&W Enters., L.L.C.*, 315 F.3d at 536 (holding that first factor "weigh[s] against [plaintiff] . . .  because [plaintiff] offers effectively no explanation").  Unlike those movants, Mitchell explains that he just recently learned that OWB and CRFS failed to preserve evidence of OWB's express certifications to the VA (Dkt. #253 at p. 2).

While OWB does not dispute that its failure to notify CRFS of this litigation resulted in the deletion of all of OWB's VA claim files prior to 2014, it does dispute whether these files would have revealed express certifications by OWB to the VA.  But that is speculation.  Indeed, because the files were not retained, the Court will never know exactly what was submitted through VALERI and whether express certifications were made by OWB prior to 2014.  In other words, since the Court lacks pivotal information, the Court cannot adequately determine if Mitchell's explanation is legitimate or a "red herring."  But the Court is only missing key information because of OWB's failure to instruct its agent to preserve documents.  And Mitchell should not be penalized

because of this.  Thus, the Court finds that Mitchell's recent knowledge that OWB and CRFS failed to preserve documents provides a reasonable and justifiable basis for his failure to seek leave to amend earlier.

Further, the Court finds that Mitchell was diligent in seeking leave to amend.  Indeed, the day after Mitchell found out that CRFS had failed to preserve OWB's claim files prior to 2014, he notified OWB of his intent to seek leave to amend the complaint (Dkt. #242 at p. 13).  Moreover, as Mitchell notes, the cases that OWB cites in support of its argument that Mitchell has not acted diligently are distinguishable.  In those cases, the plaintiffs knew of the facts that required a motion to amend for extended periods of time but failed to seek leave to amend in a timely manner. *See Patterson v. Wells Fargo Bank, N.A.*, No.4:10-cv-245, 2012 WL 13006035, at \*2 (E.D. Tex. July 18, 2002); *Clayton v. Conocophillips Co.*, No. H-08-3447, 2010 WL 1463466, at \*2–3 (S.D. Tex. Apr. 12, 2010); *Grant v. City of Houston*, 625 F. App'x 670, 679–80 (5th Cir. 2015).  By contrast, Mitchell only recently learned that OWB failed to preserve documents that relate to OWB's VA claim files.  And while OWB argues that Mitchell's spoliation theory is no excuse for his delay because the evidence shows that OWB never made any express certifications—Mitchell argues otherwise and offers support for his argument by reciting the VALERI requirements.  Again, since OWB's failure to preserve the evidence is the reason the Court cannot know for sure whether express certifications were made, it would be unfair to credit OWB's explanation over Mitchell's at this stage.  Thus, Mitchell's argument fares better.

### b.  The Importance of the Amendment

Mitchell argues the amendment is important "[g]iven Defendants' contention that Relator's VA allegations should be dismissed for lack of evidence of express certification to the VA, and Defendants' and their agent's [CRFS's] failure to preserve evidence regarding its communications

to the VA" (Dkt. #242 at p. 13).  In response, OWB contends that Mitchell's proposed amendment lacks importance because it is futile (Dkt. #251 at p. 10).

A proposed amendment is futile "if it would fail to state a claim upon which relief could be granted." *Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-cv-109, 2008 WL 3852715, at *3 (E.D. Tex. Aug. 14, 2008).  That is, "if the revision would not survive a motion made under Rule 12(b)(6), the motion for leave to amend should be denied." *Id.*  Based on this standard, the Court finds that Mitchell's proposed amendment is not futile.

The Court recognizes that OWB's futility argument is based on evidence outside of the pleadings—not on the sufficiency of Mitchell's proposed pleadings (Dkt. #242 at pp. 10–12). While OWB urges the Court to consider extrinsic evidence at this stage—and contends that courts routinely do so in cases where a motion for leave to amend has been filed after a summary judgment motion was filed—the Court declines to do so (*See* Dkt. #251 at p. 16).  For the benefit of both parties, the Court finds that determining whether summary judgment is warranted at this juncture would be overhasty.  Indeed, the parties were only able to devote minor parts of their motions to this issue.  Along the same lines, that the parties seek the Court's help to resolve a dispute concerning Exhibits G–L contained in OWB's Sur-Reply and whether supplemental briefs should be allowed to address these exhibits highlights that resolving the issue of summary judgment at this stage would be premature.  Considering what is at stake, the Court finds that the parties should have the opportunity to fully brief the issue.  Because the Court finds that the proposed amendment is important and not futile at this time, the second factor weighs in favor of finding good cause.

### c.  Potential Prejudice in Allowing the Amendment

Mitchell argues that OWB will not be prejudiced "because the amendment merely adds factual specificity to an already existing claim (i.e., that Defendants violated the FCA by making false certifications to the VA)" (Dkt. #242 at p. 14).  Conversely, OWB contends that Mitchell's amendment would unduly prejudice OWB because "seeking leave to amend a complaint in response to a well-taken summary judgment motion is inherently prejudicial" (Dkt. #251 at p. 14).

The Court finds that the amendment would not be unduly prejudicial to OWB.  While it is true that OWB has already filed two summary judgment motions, the trial is still six months away.  Thus, it is not so late in the litigation that OWB would not have sufficient time to prepare an adequate defense.  Further, Mitchell contends that he "would not oppose additional summary judgment briefing limited to implied false certification" (Dkt. #253 at p. 3).  Thus, since OWB would have more than sufficient time to brief this one issue, this cuts against any prejudice alleged by OWB.  Moreover, as noted earlier, this additional briefing appears to be necessary.  Since OWB filed its Rule 56(d) summary judgment motion and supplemental response, additional evidence that the Court has declined to consider at this stage for reasons above has come to light regarding Mitchell's VA claims.  Thus, as new evidence has been uncovered since the filing of OWB's motions for summary judgment, the fact that OWB has already extended time and resources on briefing its summary judgment motions is less compelling to the Court.

Further, though OWB argues that the untimely amendment "has prejudiced [OWB]'s ability to obtain discovery into the basis of his implied certification allegation," (Dkt. #251 at p. 15), OWB does not identify any discovery that it needs regarding the implied certification allegation.  Indeed, since OWB contends that materiality and scienter are elements for both express and implied certifications under the FCA, it is not evident what different or additional discovery

would be needed.  Moreover, according to Mitchell, Mr. Nelson Locke, Mitchell's expert, has already supplemented his expert report to include opinions relating to OWB's implied false certifications to the VA, and OWB has already had the chance to cross-examine him regarding those opinions (Dkt. #242 at p. 14).  Additionally, OWB had the opportunity to address Locke's supplemental opinions in its rebuttal expert reports (Dkt. #242 at p. 11).  Thus, these factors also weigh in favor of OWB not being unduly prejudiced by the amendment.

Finally, as Mitchell points out, unlike the cases cited by OWB, Mitchell's proposed amendment does not make this "essentially a new lawsuit with new claims" or "require Defendants to start over with regard to discovery and other procedural matters." *Todd v. Grayson Cty., Tex.*, No. 4:13-cv-574, 2014 WL 3385188, at \*2 (E.D. Tex. July 10, 2014).  Rather, Mitchell's new allegations regarding implied certifications are not significantly different from his current allegations and would not require substantially different preparation by both parties.  Indeed, the amendments "only add specificity to an already-existing claim." *La Liga League, LLC v. U90C Mgmt. Grp.*, LLC, No. 4:20-cv-00726, 2021 WL 1377263, at \*3 (E.D. Tex. Apr. 12, 2021).  Thus, because Mitchell's proposed amended complaint would not "significantly alter the nature of the suit," *Advanced EDR Sys., LLC v. Design Sols., Inc.*, No. A-07-CA-698-LY, 2008 WL 11415901, at \*3 (W.D. Tex. Nov. 12, 2008), the third factor also weighs in favor of finding good cause.

### d.  The Availability of a Continuance to Cure Such Prejudice

Mitchell contends that there is no need for a continuance since Mr. Locke supplemented his expert report prior to the deadline and OWB had an opportunity to depose him prior to the rebuttal expert report deadline (Dkt. #242 at p. 11).  OWB does not dispute this, and nowhere in the response or sur-reply does OWB actually request a continuance.  Instead, OWB argues generally that the prejudice cannot be cured by a continuance (Dkt. #251 at p. 14).  The Court finds

that a continuance does not appear to be necessary, so this factor also weighs in favor of finding good cause. *See Earl v. Boeing Co.*, No. 4:19-cv-507, 2021 WL 3021463, at *2 (E.D. Tex. July 16, 2021) (finding that because continuance "does not appear necessary . . . [t]his factor weighs in Plaintiffs' favor).

In sum, "'[t]he Rule 16(b)(4) analysis is holistic,' such that the Court 'does not mechanically count the number of factors that favor each side' but rather 'focuses on the diligence of the party seeking to modify the scheduling order.'" *Sievert v. Howmedica Osteonics Corp.*, No. 3:18-CV-2175-S, 2020 WL 2507678, at *1 (N.D. Tex. May 15, 2020) (quoting *Kouzbari v. Health Acquisition Co.*, LLC, No. 3:18-CV-0126-D, 2018 WL 6514766, at *4 (N.D. Tex. Dec. 11, 2018)). Considering the factors above in this light and that all four factors weigh in favor of finding good cause, the Court finds there is good cause under Rule 16(b)(4) for leave to amend.  As such, the Court now considers whether Mitchell has satisfied the more lenient Rule 15(a) standard.

## II.        Whether Leave to Amend Should Be Granted Under Rule 15(a)

To analyze Mitchell's motion properly under Rule 15(a), the Court looks to the five relevant factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of amendment. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citations omitted).

Having considered the parties' positions and finding overlap between some of these factors and the Rule 16 factors, the Court finds no evidence of undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility of amendment.  Even further, the "presumption in favor of granting parties leave to amend" supports the Court's decision here to

grant Mitchell's leave to file his Third Amended Complaint. *See Mayeaux v. La. Health Serv. &*

*Indem. Co*., 376 F.3d 420, 425 (5th Cir. 2004).

## CONCLUSION

It is therefore **ORDERED** that Relator's Motion for Leave to Amend the Second Amended

Complaint (Dkt. #242) is hereby **GRANTED**.  As the Clerk does not remove and file exhibits,

Mitchell is directed to file his Third Amended Complaint without delay.

**IT IS SO ORDERED.**
 **SIGNED this 24th day of January, 2022.**


_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE