# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW MITCHELL, and ANDREW MITCHELL, Individually,<br><br>*Plaintiffs/Relator,*<br><br>v.<br><br>CIT BANK, N.A., d/b/a ONEWEST BANK, and CIT GROUP, INC.,<br><br>*Defendants.* | § § § § § § § § § § § § § Civil Action No. 4:14-CV-00833<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Exclude Proposed Expert Testimony of David Fuller (Dkt. #216). Having considered the motion and the relevant pleadings, the Court finds that the motion should be **DENIED**.

## BACKGROUND

The background of this lawsuit is more thoroughly set forth in the Court's Memorandum Opinion and Order on Defendants' motion for summary judgment (Dkt. #271). Highly summarized, this case arises out of allegations made by Relator Andrew Mitchell ("Mitchell") that One West Bank ("OWB")[1] violated the False Claims Act ("FCA") by submitting false claims to the Government to obtain payment under three different Government loan-modification programs. These three programs were Treasury's Home Affordable Modification Program ("HAMP"), the Department of Housing and Urban Development ("HUD")'s Federal Housing Administration ("FHA") mortgage insurance program ("FHA-HAMP"), and the Department of Veteran Affairs

---

[1] Unless otherwise specified, OWB refers collectively to Defendants' CIT Bank, N.A. (d/b/a OneWest Bank) and CIT Group Inc.

("VA")'s mortgage insurance program ("VA-HAMP").  Mitchell contends that OWB certified to these agencies that it was in material compliance with relevant laws and regulations, while OWB knew it was not.  These false certifications allegedly caused the Government to make payments to OWB that it would not have otherwise made.

On October 21, 2021, OWB filed the present motion, seeking to exclude Mitchell's expert, David Fuller ("Fuller"), from testifying at trial (Dkt. #216).  On November 4, 2021, Mitchell filed his response (Dkt. #226).  On November 10, 2021, OWB filed its reply, (Dkt. #229), and on November 17, 2021, Mitchell filed his sur-reply (Dkt. #239).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue.  FED. R. EVID. 702.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury.  509 U.S. 579, 590–93 (1993).  Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable.  *Daubert*, 509 U.S. at 590–91.  A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education."  FED. R. EVID. 702.  Moreover, to be admissible, expert testimony must be "not only relevant but reliable."  *Daubert*, 509 U.S. at 589.  "This gate-keeping obligation applies to all types of expert testimony, not just scientific

testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Mitchell retained Fuller as an expert to determine the amount of economic damages incurred by the Government as a result of OWB's allegedly false certifications of compliance with the Government's HAMP programs (Dkt. #226, Exhibit B). Fuller calculated both statutory damages and actual damages incurred by the Government (Dkt. #226, Exhibit B). According to Fuller, his statutory damages calculations were based on the statutory minimum and maximum

penalties under the FCA (Dkt. #226, Exhibit B ¶ 20).  By contrast, Fuller's actual damages were calculated under four alternative scenarios, all of which "represent[] a different viewpoint of the total amount that the [G]overnment actually paid to [OWB] for its participation in [the HAMP programs]" (Dkt. #226 at p. 10).  In its motion, OWB seeks to exclude Fuller's damages opinions for three main reasons: (1) he blindly relies on Mitchell's counsel's flawed assumptions without conducting any independent analysis, making his opinion unreliable; (2) he performs nothing more than basic calculations the jury is capable of performing; and (3) he concedes he is not qualified to opine on the background section of his expert report—the only section of his report that does not contain faulty calculations (Dkt. #216 at pp. 18–19).  The Court examines these arguments in turn, beginning with OWB's argument that Fuller's opinion is unreliable for a number of reasons.

## I. Whether Fuller's Methodology is Reliable

OWB makes a number of arguments as to why Fuller's methodology is unreliable—focusing most of its briefing on this issue.  First, OWB argues that Fuller's proposed testimony is unreliable because he merely "parrots Relator's counsel's arguments without any independent analysis or opinion as to the proper amount of damages" (Dkt. #216 at p. 5).  Second, OWB follows this general attack by identifying specific flawed assumptions that Fuller blindly relied on that were erroneous (Dkt. #216 at p. 7).  Third, OWB contends that Fuller used a flawed methodology in scenarios 3 and 4 of his actual damages (Dkt. #216 at p. 14). Mitchell disagrees on all points.

### A. Whether Fuller's Opinion Should Be Excluded Because He Failed to Conduct an Independent Analysis

As noted, OWB contends Fuller's testimony should be excluded because "all his damages scenarios were supplied by Relator's counsel" and Fuller "has not independently evaluated them" (Dkt. #216 at p. 9).  In response, Mitchell asserts that OWB's "rel[iance] on select snippets of [] Fuller's deposition testimony" "ignores what [] Fuller actually did" (Dkt. #226 at p. 8).  For

4

example, according to Mitchell, Fuller "perform[ed] a thorough review and analysis of the financial information provided by Defendants, which required the identification of relevant payment data from reams of data . . . and required [] Fuller to make judgment calls about which data to use for his damages analysis" (Dkt. #226 at p. 8).

Here, the Court finds that OWB's objections are insufficient to warrant exclusion of Fuller's testimony. *See Mullenix v. Univ. of Tex. at Aus.*, No. 1-19-CV-1203, 2021 WL 4304815, at *8 (W.D. Tex. Sept. 21, 2021) (finding defendant's argument that the plaintiff's expert "simply parrots a variety of calculations he arrived at using simple math applied to assumptions he was asked to make by [p]laintiff's counsel" was not a basis for disqualification and the proper subject of cross-examination). While Relator's counsel did apprise Fuller of several assumptions, including assumptions based on the applicable law, Fuller himself analyzed the relevant financial information and calculated the damages based on this data and other assumptions. Accordingly, Fuller did more than just blindly accept all of counsel's assumptions—he performed an independent review and analysis of the information. As such, OWB's concerns go to the weight that the jury should give Fuller's testimony, not the testimony's admissibility. *See Scrum All., Inc. v. Scrum, Inc.*, No. 4:20-CV-227, 2021 WL 1725564, at *3 (E.D. Tex. Apr. 30, 2021) (finding that plaintiff's argument that defendant's expert "did not conduct an independent analysis" and instead "merely synthesi[zed] [] [d]efendant's positions" could be addressed by plaintiff on cross-examination); *see also Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, No. 4:15-CV-766, 2017 WL 3388020, at *2 (E.D. Tex. Aug. 3, 2017) ("[Plaintiff]'s concerns regarding the extent of defense counsel's influence on [the expert's] report goes to the weight of his testimony rather than its admissibility."). Indeed, "[i]f [Fuller]'s claims are as unsupported or conclusory as [OWB] claims,

5

then vigorous cross examination will reveal that." *Mobility Workx, LLC v. Cellco P'ship*, 4:17-CV-00872, 2019 WL 5721814, at *8 (E.D. Tex. Nov. 5, 2019) (internal quotations omitted).

Accordingly, the Court declines to exclude Fuller's testimony on the basis that he failed to conduct any independent expert analysis. The Court now turns to OWB's argument that Fuller's opinion is unreliable because his "counsel-supplied" assumptions "were hopelessly flawed" (Dkt. #216 at p. 6).

### B. Whether Fuller's Testimony Should Be Excluded Because He Relied on "Flawed Assumptions"

OWB generally argues that the assumptions underlying Fuller's report were erroneous and then points to several specific flawed assumptions. In response, Mitchell asserts that Fuller is permitted to make basic assumptions about disputed facts, and, at best, OWB's objections to Fuller's assumptions go to the weight of his testimony, not its admissibility (Dkt. #226 at p. 9).

It is axiomatic that expert witnesses are permitted to make certain assumptions when reaching their opinions. *See Nova Consulting Grp., Inc. v. Eng'g Consulting Servs., Ltd.*, 290 Fed. App'x 727, 732–33 (5th Cir. 2008). Yet, while experts may make basic assumptions about disputed facts, an opinion based on insufficient, erroneous information should be excluded. *Loy v. Rehab Synergies, LLC*, No. 7:18-CV-00004, 2021 WL 3929398, at *3 (S.D. Tex. Sept. 2, 2021). Similarly, while an expert can base his conclusions off sound legal principles, an expert opinion premised on an incorrect understanding of the law should be excluded. *Lamar Advert. Co. v. Zurich Am. Ins. Co.*, 533 F. Supp. 3d 332, 344–45 (M.D. La. 2021). Putting these principles together, Fuller was permitted to rely on disputed facts and sound legal principles in formulating his damages opinions. However, if Fuller's opinion was based on unsubstantiated assertions or incorrect understandings of the law, then his proposed testimony crosses into forbidden territory and should be excluded.

Here, at bottom, OWB's challenges boil down to disagreements with the assumptions underlying Fuller's analysis. However, importantly, Fuller's assumptions are based on disputed facts—not facts that are indisputably wrong. Thus, the Court finds that OWB's criticisms go to the weight of Fuller's testimony, not its admissibility. *See Boudreaux v. Scott's Boat Rentals, LLC*, No. 14-1820, 2016 WL 9406087, at *4 (E.D. La. Apr. 20, 2016) (finding courts should not "exclude opinions that rely on contested premises and assumptions"). As here, "[w]hen the parties dispute the facts underlying the expert's opinions, they may address these issues on cross-examination in light of the facts that emerge at trial." *Id.* Indeed, it is the purview of the fact-finder to decide the accuracy of facts underlying an opinion. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002).

To give one example, OWB criticizes Fuller for assuming, "based solely on counsel's instructions, that any benefits the [G]overnment received were intangible and impossible to calculate" (Dkt. #216 at p. 14). According to OWB, under Fifth Circuit precedent, "the [G]overnment's damages under the False Claims Act must be offset by the monetary value of any benefit the [G]overnment received" (Dkt. #216 at p. 13-14 (citing *U.S. ex rel. Harman v. Trinity Indus., Inc.*, 872 F.3d 645, 652–53)). Thus, Fuller's opinions are premised on erroneous legal principles because he did not consider potential benefits to the Government from OWB's participation in the HAMP's programs.

The Court disagrees. Fuller's report explains that his four actual damages scenarios are premised upon the legal principle that "when the Government receives an intangible benefit from a contract and the value of that benefit is impossible to calculate, the appropriate measure of actual damages with respect to a claim under the False Claims Act is the amount the Government actually paid to the allegedly offending violator as a result of the individual's misrepresentations" (Dkt.

7

#226, Exhibit B ¶ 23). Thus, the four actual damages scenarios represent a different viewpoint of the total amount that the Government actually paid to OWB for its participation in the HAMP programs (Dkt. #226 at p. 10).

While OWB is critical of Fuller for assuming that any benefits the Government received were intangible and impossible to calculate, the Court finds that these were appropriate assumptions. To begin, they are based on a correct statement of the law. Indeed, the Fifth Circuit has found that "where there is no tangible benefit to the Government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the Government actually paid to the [d]efendants." *U.S. ex rel. Longhi v. United States*, 575 F.3d 458, 472–73 (5th Cir. 2009). Further, as Mitchell points out, whether or not there was a tangible benefit to the Government and whether the intangible benefit is impossible to calculate are disputed issues of fact, which experts are allowed to rely on. *See Nerium SkinCare, Inc. v. Nerium Int'l*, LLC, No. 3:16-CV-1217, 2018 WL 3520840, at *6 (N.D. Tex. July 13, 2018) ("[An expert] is permitted to make basic assumptions about disputed facts in calculating damages."). Thus, like the other assumptions Fuller relies on, the Court finds that this assumption is not a basis for excluding Fuller's opinions. These challenges should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

Moreover, many of the allegedly flawed assumptions identified by OWB relate to Fuller's statutory damages calculations—damages the Court determines, not the jury. For example, OWB argues that with regard to the statutory damages calculations, Fuller inappropriately assumed that "each loan for which [OWB] received a payment constituted a separate false claim," that "[Mitchell]'s "counsel supplied the number of loans," and that "[Mitchell]'s counsel similarly

8

supplied the range of values for each violation" (Dkt. #216 at p. 9). However, again, OWB's criticisms with Fuller's assumptions concern factual disputes between the parties, and are thus not grounds for excluding Fuller's opinion. *See Martinez v. Offshore Specialty Fabricators, Inc.*, No. 08-4224, 2011 WL 820313, at *3 (E.D. La. Mar. 2, 2011) ("Simply disagreeing with the underlying facts relied on by an expert is not grounds for excluding that expert under *Daubert*. . . ."). Rather, OWB may attempt to prove at trial that Fuller's assumptions and the bases for his opinions are inaccurate and cross-examine Fuller regarding those disputed assumptions.

Further, since the Court determines statutory damages—not the jury—"the importance of the trial court's gatekeeper role is significantly diminished." *Whitehouse Hotel Ltd. P'ship v. Comm'r*, 615 F.3d 321, 330 (5th Cir. 2010). In such a situation, "it is presumed that the judge will understand the limited reason for the disclosure of [any] underlying inadmissible information and will not rely on that information for any improper purpose." *Williams v. Illinois*, 567 U.S. 50, 69 (2012). Further, at trial, the Court will also apply common sense and ignore unhelpful or conclusory opinions. Likewise, at the request of the defense, the court can give an appropriate instruction to the jury. Thus, the Court declines to exclude Fuller's testimony based on his assumptions in his statutory damages calculations. *See Swanston v. City of Plano, Tex.*, No. 4:19-cv-412, 2021 WL 327588, at *3 (E.D. Tex. Feb. 1, 2021) (finding exclusion of expert's opinions unwarranted largely because the court, and not a jury, would hear the case).

Therefore, the Court finds that exclusion of Fuller's testimony is unwarranted based on his assumptions. The Court now turns to OWB's argument that Fuller used a flawed methodology in calculating his actual damages scenarios 3 and 4.

9

### C. Whether Fuller Used a Flawed Methodology

OWB lodges a number of criticisms at Fuller's calculations of actual damages in scenarios 3 and 4, contending that Fuller's flawed methodology renders his opinions unreliable. In Fuller's actual damages scenarios 3 and 4, Fuller calculated a damages estimate by multiplying either the total payments received by OWB, or the servicer payments OWB received, by the material non-compliance rate Nelson Locke ("Locke") derived (Dkt. #226, Exhibit B ¶¶ 30-32). According to Fuller, these calculations exclude the arguably compliant portion of the loans from the damages calculations (Dkt. #226, Exhibit B ¶ 31). However, OWB argues this methodology was flawed for two main reasons. First, OWB contends that the "simplistic multiplication method presumes payments are equal across all loans"—though they are not (Dkt. #216 at p. 13). Thus, "[t]his flawed methodology inflates the potential damages" (Dkt. #229 at p. 4). Second, OWB contends Fuller "further compounded this flaw by applying a weighted average of compliance rates that includes Locke's error rate for both conventional loans for which [OWB] received payments and the population for which [OWB] did not" (Dkt. #229 at p. 4). Accordingly, this "effectively doubled the error rate on loans" (Dkt. #229 at p. 4).

Though OWB argues Fuller's calculations under scenarios 3 and 4 resulted in inflated damages, the Court finds that these concerns go to the weight, not the admissibility, of Fuller's testimony. First, while the Court recognizes that payments to OWB were not uniform across all loans, this does not lead to the conclusion that Fuller's methodology is flawed. Nevertheless, "if the underlying reasoning for [Fuller's] methodology is flawed, absurd, or even irrational" as OWB claims, "then '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof' will serve as the proper antidote for attacking these potentially 'shaky' arguments." *Mobility Workx, LLC*, 2019 WL 5721814, at *15 (alteration in original)

(quoting *Daubert*, 509 U.S. at 596). "Put simply, a court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable." *Id*. at *6 (internal quotations omitted).

Second, though OWB faults Fuller for applying the weighted average of Locke's compliance rates for conventional loans with and without incentive payments, again, the Court does not find that this warrants the exclusion of Fuller's testimony. To be sure, OWB does not attack the methodology in scenarios 1 and 2, which relied on the payments made to OWB by the Government. Instead, OWB criticizes the materially non-compliant percentages Fuller used in scenarios 3 and 4, which were used to reduce the amounts under scenarios 1 and 2, respectively. Specifically, OWB argues that Fuller should have used the weighted average of compliance rates only for loans for which OWB received payments, as opposed to the weighted average of compliance rates for loans that received a payment and those that did not. According to OWB, Fuller's failure to do this nearly doubled the rate—from 31.09% to 58.84% for instance (Dkt. #216 at p. 15). Thus, upon closer inspection, the primary disagreement is not with the methodology Fuller uses, but with the inputs he used in scenarios 3 and 4. *See Mobility Workx, LLC*, 2019 WL 5721814, at *17. As such, OWB's challenges go to the weight to be given Fuller's expert testimony and should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.

Accordingly, the Court finds that OWB's criticisms of Fuller's calculations in scenarios 3 and 4 do not warrant exclusion of his testimony. The Court now turns to OWB's argument that Fuller's damages opinions should be excluded because his calculations are basic math the jury is capable of performing (Dkt. #229 at p. 5).

### II.     Whether Fuller's Testimony Is Helpful to the Trier of Fact

OWB argues Fuller's damages opinions should be excluded because they do not reflect any expertise—they consist of nothing more than simple arithmetic (Dkt. #216 at p. 16). For example, according to OWB, all of Fuller's calculations involve basic addition and multiplication that any lay juror can perform (Dkt. #216 at p. 16). In response, Mitchell asserts that Fuller's damages opinions are not limited to bare mathematical calculations (Dkt. #239 at p. 5). According to Mitchell, Fuller's opinions also include an analysis of the relevant financial information produced by OWB (Dkt. #239 at p. 5). Thus, though OWB "grossly oversimplif[ies]" Fuller's analysis, his testimony will assist the jury in determining the appropriate amount of damages (Dkt. #226 at p. 17).

The Court agrees with Mitchell. Fuller's damages calculations will aid the jury in their determination of actual damages. While Fuller's calculations are not difficult, Fuller expended hours analyzing various sources of information to assess which financial reports to utilize. For example, to determine the total amount of payments received by OWB, "Fuller evaluated various documents produced by [OWB], identified the relevant payment amounts from those documents, and reconciled the conflicting data using his professional judgment and expertise in order to determine the total payments to [OWB]" (Dkt. #226 at p. 17). Thus, though Fuller's damages calculations ultimately involve simple arithmetic, Fuller's opinion is not limited to these bare mathematical calculations. To be sure, Fuller's performance of these tasks amounts to more than mere addition, subtraction, and multiplication, and his expertise in compiling and analyzing the data and documentation given provides the jury with valuable and necessary assistance. *See Britt v. Miss. Farm Bureau Cas. Ins. Co.*, No. 1:18-CV-38, 2022 WL 433323, at *2 (N.D. Miss. Feb. 11, 2022) (finding that allowing expert to utilize and present her specialized knowledge and

experience to calculate figures from different sources and synthesize her results would aid the jury in ascertaining the plaintiffs' alleged damages).

Further, courts routinely recognize that though the arithmetic an expert employs may involve simple calculations, an expert's compilation and synthesis of information is helpful to the trier of fact in ascertaining damages. *See Prejean v. Satellite Country, Inc.*, 474 F. Supp. 3d. 829, 835 (W.D. La. 2020) ("Even if an individual calculation appears straightforward, an expert's ability to present, in an understandable format, a vast quantity of calculations derived from disparate sources can assist a trier of fact.") (internal quotations omitted); *Solstice Oil & Gas I LLC v. OBES Inc.*, No. 12-2417, 2015 WL 5059601, at *5 (E.D. La. Aug. 26, 2015) ("Regardless of whether [the expert]'s calculations involve complex methodology, his ability to present a vast quantity of calculations derived from disparate sources in an understandable format will assist the trier of fact."); *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. SA-03-CA-189, 2004 WL 5495588, at *5 (W.D. Tex. Oct. 6, 2004) ("Given its complexity and cumbersome na's] compilation of this information and documentation into a presentable format is 'helpful' . . . [and] will assist the jury in extracting relevant information from the accounting documents . . . .").

The Court now turns to OWB's final argument—that, at the very least, Fuller should not be allowed to testify about information contained in the "Background of the Situation" section in his report.

### III. Whether Fuller's Testimony on Background Information Should Be Excluded

OWB argues that Fuller's testimony about the background section of his report should be excluded because "Fuller testified that he (i) lacks any expertise on those issues, (ii) is not offering an opinion on the information, and (iii) assumed the information to be true" (Dkt. #229 at p. 6). In response, Mitchell argues "the factual background section of Mr. Fuller's report provides

13

necessary context for his opinions and would assist the trier of fact in understanding the bases for his opinions" (Dkt. #226 at p. 19).

Here, the Court finds that Fuller is permitted to testify about the factual background section in his report. To begin, Rule 26 mandates that that an expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them . . . ." FED. R. CIV. P. 26(a)(2)(i). Fuller's report complies with Rule 26, summarizing the factual basis for his conclusions. Moreover, Fuller openly admitted this at his deposition—that the background section does not offer his opinions. Rather, the section sets forth the basis for his opinions. Indeed, as Mitchell explains, the section "provides necessary context for his actual damages scenarios, which are predicated on facts related to the underlying purpose, benefits, and requirements of the HAMP programs and [OWB]'s role as [a] HAMP servicer, its certifications, and its servicing deficiencies" (Dkt. #239 at p. 6). Simply put, it is entirely permissible for an expert to "explain[] that these were the facts that form the basis of his expert opinion." *Huawei Techs. Co. v. Yiren Huang*, No. 4:17-CV-00893, 2019 WL 2077821, at *8 (E.D. Tex. May 9, 2019) (rejecting argument that case background section of expert's report should be excluded). Accordingly, because "questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility" Fuller's testimony should not be excluded on this ground. *See United States v. 14.38 Acres of Land Situated in Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996).

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Exclude Proposed Expert Testimony of David Fuller (Dkt. #216) is hereby **DENIED.**

**IT IS SO ORDERED.**
SIGNED this 26th day of April, 2022.

14

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE